SULLIVAN et al. v. LAKE SUPERIOR ELEVATOR CO.

(District Court, D. Minnesota. June 19, 1893.)

WHARVES—DANGEROUS PREMISES—INJURY TO SHIP.

A vessel moored at defendant's wharf was ordered to drop down below
the elevator alongside which she lay, and did so, mooring abreast of a
trestle maintained by defendant. This trestle was known to both parties
to be unsafe, and it blew down, and injured the vessel. When the cap-
tain was notified of its condition, the vessel's machinery was undergoing
repairs, so that she could not have been moved by her own steam in time
to avoid the accident, as the wind was then blowing strongly. It was
perfectly practicable to move her by hand lines with the force then on
board, but, instead of doing so, the captain started for a tug office, a
mile distant, for assistance, and before he returned the mischief was done.
*Held,* that the vessel was in fault as well as defendant, and the damages
should be divided.

In Admiralty. Libel by L. S. Sullivan and others against the
Lake Superior Elevator Company for injuries to a vessel. Decree
for half damages.

H. R. Spencer, for libelants.
Walter Ayers, for respondent.

NELSON, District Judge. The steamer Rust was injured while
tied up alongside of a private dock owned by the defendant com-
pany, and erected on navigable waters at Duluth, upon which
were located the company's elevators. The vessel had been ordered
to drop down below the first elevator, to allow another steamer,
having a prior right, to load therefrom. The captain of the Rust
obeyed the order, and tied up opposite a trestlework built between
two of the elevators, upon the top of which a covered passageway
was constructed for carrying grain. While moored to the dock
at this place the trestle was blown over, and fell upon the deck
of the vessel, injuring her, and this admiralty suit in personam is
brought to recover damages for the injury sustained.

No question is raised as to the jurisdiction of the court, which
appears to be clear under the doctrine announced in The Plymouth,
3 Wall. 20, that the substance and consummation of the wrong
and injury complained of took place upon navigable waters. The
trestlework owned and built by this defendant company, and
erected near the side of the dock where the Rust was moored,
was structurally in an unsafe condition, and known to be so by

the owners. The defendant company was legally in fault in permitting boats to moor at the place where the Rust was dropped down, under the circumstances, and the only controverted question in the case is, were the persons in command of the vessel in fault, and should the damages be equally divided?

Where both parties are in fault, the admiralty courts, according to the principles of justice and equity, apportion the damages; and in this case the rule laid down in Atlee v. Packet Co., 21 Wall. 395, that the entire damages should be equally divided between the parties, is equitable. The evidence satisfies me that before the trestle fell the persons in charge of the Rust were notified that it was weakened by the force of the wind blowing in the direction of the vessel, and that danger was imminent. The engineer was repairing the machinery, and there was not sufficient time, after notice of the unsafety of the trestle, to put it together and get up steam, and move her in that way to a place of safety; but the proof is clear that by the exercise of the experience and skill which those in command of her are presumed to possess she could have been moved by the hand lines. The danger was imminent, and, instead of increasing the number of bow lines and letting go the stern lines, so that the vessel would swing out, or dropping her down or moving her up, the captain started for a tug office, located at least a mile from the dock, to procure assistance. The vessel had large hawsers aboard, and a crew of 15 men, and the snubbing posts were strong. The wind was fresh, but not blowing a gale. The vessel was provided with ample appliances for moving her by hand. The slip in the harbor protected her to some extent, and the maneuver of swinging her out might have been accomplished by the exercise of ordinary care. This would have been a prudent course to adopt, or she could have been moved up or dropped down with safety. There was nothing in the existing conditions, shown by the evidence, to prevent successful action on the part of those in charge of the vessel. They were in fault, and contributed to the injury sustained.

The damages must be equally divided. A reference is usually ordered to ascertain the amount, but, as proof was offered pro and con on the trial, and received, I shall determine the amount of damages. The amount claimed and proved as the damage to the vessel, tackle, and apparel I find to be $1,501.17. One-half of this sum is $750.58. The rule suggested by the proctor for defendant by which to measure damages is not correct. The vessel must have a smokestack, and the old one could not be repaired. She must have new ropes, and they were purchased, and their value proved. A decree is ordered in favor of the libelants for $750.58 and costs.